SIDNEY SCHWARTZ,
Plaintiff,

*vs.*

DAVID J. GREENE, A. LOUIS ORESMAN, A. C. RAFFERTY, R. E. CASE, R. E. LORD, A. H. PARKER, JR., S. A. SCHWARTZ, THEODORE R. COLBORN, DUDLEY G. LAYMAN, ALBERT A. LIST, W. J. DUR-OCHER, VERA G. LIST, ANTHONY SCALA, LIST INDUSTRIES CORPORATION, a Delaware Corporation, and GERA CORPORATION, a New Jersey Corporation,
Defendants.

*New Castle, August 22, 1960.*

*Irving Morris,* Wilmington, and *Louis C. Fieland,* New York City, for plaintiff.

*William E. Taylor, Jr.,* Wilmington, and *Abraham L. Pomerantz,* of Pomerantz, Levy & Haudek, New York City, for defendant, David J. Greene.

*James T. McKinstry,* of Richards, Layton & Finger, Wilmington, and *O'Brien, Driscoll & Raftery,* New York City, for defendants, List Industries, Inc. and Gera Corp.

MARVEL, Vice Chancellor: Plaintiff claims to be the owner of common stock of List Industries, Inc. and brings this derivative action for the benefit of such corporation. At trial, the issues raised in the pleadings were narrowed to those allegations of the complaint which are concerned with an allegedly improper purchase and sale of List Industries stock carried out on the New York Stock Exchange on November 11, 1957. As a result of such transaction Gera Corporation, a 98% owned subsidiary of List Industries, through the instrumentality of the Chemical Corn Exchange Bank became the owner of 140,000 shares [1] of List Industries' own stock.

Such stock had been offered for sale by the defendant, David J. Greene, who at the time was a director of List Industries and who had assembled such block from his family holdings and those of his brokerage associates and customers. While the complaint sought rescission of such transaction, plaintiff now merely seeks damages from the defendant, Greene, for the amount allegedly caused to be paid for such shares over and above what he contends would have been their cost to List Industries' subsidiary in a truly open market. Plaintiff specifically contends that the price paid for such stock was in excess of its fair market value in an amount of approximately $100,000 and that the payment of such excessive amount constituted an improper waste and use of corporate funds for the personal profit of the defendant, Greene.

Plaintiff also charges that the purchase and sale complained of was part of a conspiracy among the directors of List Industries Corporation to use funds of the corporation to benefit not only Greene but the defendant, Albert A. List. None of the other named individual defendants has appeared, recovery being sought only from the defendant, Greene.

While the point has not been briefed, plaintiff's case is apparently based on the theory that while the transaction complained of, as ulti-

---

1. Such shares were purchased at $9 per share. The market price of such stock later reached $29¾, and it currently sells at approximately $15 per share in the form of Glen Alden Stock, the corporation resulting from the merger of List Industries into such corporation.

mately consummated, involved Mr. Greene, his family, business associates and their customers on the one hand and Gera Corporation on the other, he is entitled to sue derivatively as a List stockholder inasmuch as List Industries is the owner of virtually all of Gera's stock.

Both David J. Greene and Albert List testified (the latter by deposition) that the identity of the purchaser of the Greene stock was not disclosed prior to consummation of the purchase and sale complained of, however, I do not think it necessary to delve into what might be termed the business realities of the transaction or what Greene might have or should have surmised (as plaintiff contends) about the identity of the ultimate purchaser because I am of the opinion that plaintiff has failed to present any clear and cogent proof of calculable loss suffered by List Industries as a result of the transaction complained of.

The statutory law of Delaware permits a corporation to purchase its own shares provided such purchase does not impair corporate capital or constitute an improper bid for control, § 160, *Title 8 Del.C.,* and *Kors v. Carey, supra* p. 47, 158 *A.2d* 136. No such contentions are here made. Rather it is urged that Greene as a director committed a breach of his required undivided loyalty to his corporation by profiting at its expense. Furthermore, while he in fact acted as broker for an undisclosed principal, which proved to be Gera Corporation, it is not and could not be contended that he represented the corporation in the negotiations which preceded the transaction, the purchase having been negotiated on the buyer's side by Albert A. List, chairman of the board of List Industries, and approved by the board of Gera on the afternoon of November 8, 1957. Subsequently, the purchase was ratified by the executive committee of List Industries on November 14, 1957 after Greene on learning of the identity of the purchaser had resigned as a director and a member of such executive committee. Accordingly, this is not a case of a corporate officer dealing with himself, and List, the dominant figure on the purchaser's side, as the owner of approximately 50% of List Industries' stock had an obvious interest in avoiding any overpayment for the stock in question.

The relevant facts concerning the transaction are as follows. The $9 per share price for the shares to be purchased by List ostensibly for a friend having been agreed on in an arm's length transaction, the defendant, Greene, in order to consummate the contract made with List, on November 11, 1957 initially purchased on the New York Stock Exchange 3,900 shares of List stock in the name of the Chemical Corn Exchange Bank, the designated purchasing agent, thus adding a sufficient number of shares to the 136,100 shares available to him (67,500 of such shares being held by Greene and members of his family and the balance representing stock of customers or associates) to make up the 140,000 shares which had been offered and accepted. Such initial purchase was made at the market price of $9 per share, the market having opened at $8⅞ per share bid, $9 per share asked. Significantly, Dudley Layman, a director and officer of List Industries, on the same day purchased through Greene 5,000 shares of List stock at the same price as did other purchasers through other brokers. In other words, all shares of List stock traded on the New York Stock Exchange on November 11, 1957 were bought and sold at the same price.[2] On Friday November 8, 1957, the last preceding trading day, stock of List Industries had closed at $8⅞ per share.

Notwithstanding these facts, which are hardly consonant with plaintiff's theory of a breach of trust but rather establish the fact that the negotiated price for the stock in question was fair and in conformity with the market, he makes an argument of desperation based on vague contentions of price rigging and the like. Having abandoned his prayer for rescission, he has also cast far and wide in an effort to impute improper motives. Finally, he indulges in conjectures on what might have happened to the market for List Industries stock had Greene in fact sold in another manner without prior negotiations with List. He virtually ignores the fact that List Industries was interested in the purchase of its own stock, its board having made substantial purchases of its own stock in the past and having by corporate resolution adopted in September, 1957 expressed a purpose to

2. The *Wall Street Journal* of November 12, 1957 discloses total shares of List Industries traded on November 11 as 146,400 at $9 per share.

continue such purchases. He also gives no consideration to the fact that if such corporation had sought to purchase such a large number of shares without prior negotiations as to price, because of the inexorable law of supply and demand the market would have been inevitably driven up.

In short, I am satisfied that Gera Corporation acquired Greene's List Industries shares at a fair price. Merely to speculate that other methods might have been employed by the corporation for the purpose of acquiring its own shares for its subsidiary, when it can merely be surmised whether or not such other methods of stock acquisition might have in fact resulted in a saving, does not rise to the dignity of proof.

As to the allegations that Greene improperly received a purchasing commission which he shared with the firm of H. Heitz & Co. it need merely be noted that § 1701 of Article XV of the Constitution of the New York Stock Exchange requires that such a commission must be paid on any purchase or sale and the amount charged was in conformity with established brokerage practice.

On notice, judgment will be entered for the defendant, David J. Greene, costs to be assessed against plaintiff.